**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| COOL-PAK, LLC, | Civil No. 11-2182 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |
| MYRON LARSEN and ROYAL INTERPACK NORTH AMERICA, INC., | |
| Defendants. | |

Rodney A. Harrison and Nathan J. Plumb, **OGLETREE DEAKINS NASH SMOAK & STEWART, PC**, 7700 Bonhomme Avenue, Suite 650, St. Louis, MO 63105; and Andrea D. Kiehl and Jody A. Ward-Rannow, **OGLETREE DEAKINS NASH SMOAK & STEWART, PC**, Wells Fargo Center, Suite 3800, 90 South Seventh Street, Minneapolis, MN 55402, for plaintiff.

Edward E. Beckmann, **HELLMUTH & JOHNSON PLLC**, 8050 West 78th Street, Edina, MN 55439, for defendant Royal Interpack North America, Inc.

This case arises from the actions of Myron Larsen, a former sales associate of Cool-Pak, LLC ("Cool-Pak"). Cool Pak alleges that during his final months of employment with Cool-Pak, Larsen was also working for its direct competitor, Royal Interpack North America, Inc. ("Royal Interpack"). Cool-Pak sued both Larsen[1] and Royal Interpack. Royal Interpack brings a motion to dismiss and a motion for summary judgment, seeking dismissal of all of Cool-Pak's claims against it. Because the motion

---

[1] Cool-Pak's claim for breach of contract against Larsen was dismissed in a Consent Order. (Docket No. 18.)

for summary judgment is brought prematurely, the Court will consider only the motion to dismiss. The Court will grant-in-part Royal Interpack's motion to dismiss because it finds that Cool-Pak has failed to state a claim for tortious interference with contract.

### BACKGROUND

Because the Court considers only Royal Interpack's motion to dismiss, it considers only facts in or embraced by Cool-Pak's first amended complaint ("FAC").

### A. Larsen's Employment

Myron Larsen began working for Cool-Pak as a salesman in 2007. (FAC ¶ 15, Docket No. 15.) Cool-Pak distributes agricultural packaging products, including plastic clamshells for blueberries and tomatoes. (*Id.* ¶ 6.) As Cool-Pak's salesman, Larsen developed and maintained relationships with Cool-Pak's customers, selling up to $3,000,000 of products each year. (*Id.* ¶¶ 15, 38.)

In January 2011, while still employed by Cool-Pak, Larsen also began selling similar food packaging for Royal Interpack, a direct competitor of Cool-Pak. (*Id.* ¶¶ 27-28.) Larsen contacted customers of Cool-Pak to whom he had previous sold products and solicited sales on behalf of Royal Interpack. (*Id.* ¶¶ 29-31, 45.) Several customers purchased products from Royal Interpack instead of Cool-Pak. (*Id.* ¶ 30.) Larsen even scheduled a meeting between a customer of Cool-Pak and a Royal Interpack executive, resulting in a sale to Royal Interpack. (*Id.* ¶¶ 34-36.)

In July 2011, Larsen gave his ninety-day notice of resignation, to be effective October 14, 2011. (*Id.* ¶ 41.) Cool-Pak continued to pay Larsen until July 29, 2011 when it discovered his relationship with Royal Interpack. (*See id.*)

### B. Non-Compete Agreement

In approximately August 2011, as a result of a change in Cool-Pak's ownership, and in order to remain employed by Cool-Pak, Larsen was required to sign an agreement (the "non-compete agreement"). (*Id.* ¶ 18.) Larsen agreed to limitations of his post-Cool-Pak employment options, prohibitions on the disclosure of Cool-Pak's confidential information, and faithful performance of his duties for Cool-Pak during his employment. (*Id.* ¶¶ 18-22.) In exchange, Cool-Pak paid Larsen independent consideration of $3,000 and agreed to provide certain other benefits, including ninety days of notice pay. (*Id.* ¶ 19.)

### C. Consent Order

Cool-Pak filed a breach of contract claim against Larsen on August 2, 2011, and filed the FAC, adding claims against Royal Interpack, on August 17, 2011. On August 26, this Court dismissed Cool-Pak's only count against Larsen in a Consent Order.[2] (Docket No. 18.) Royal Interpack brought its motion to dismiss and motion for summary judgment on September 8.

---

[2] The Order also enjoined Larsen from using Cool-Pak's confidential information or "selling, distributing, promoting" or attempting to sell a wide range of agricultural packaging products "to any entity of person that purchased products from Cool-Pak during the last two years of Larsen's employment" with Cool-Pak. (Docket No. 18.)

# DISCUSSION

## I. ROYAL INTERPACK'S MOTION FOR SUMMARY JUDGMENT

"As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). "Nonmovants may request a continuance under Rule 56(f) [now (d)] . . . if they otherwise cannot present facts sufficient to justify their opposition." *Id.* Discovery has not yet begun in this case. In addition, Cool-Pak has properly submitted a declaration, as required by Rule 56(d) detailing "how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Ray v. Am. Airlines, Inc.,* 609 F.3d 917, 923 (8th Cir. 2010). The Court will deny Royal Interpack's motion for summary judgment, without prejudice, as premature.

## II. ROYAL INTERPACK'S MOTION TO DISMISS

### A. Standard of Review

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss standard, the Court considers all facts alleged in the complaint as true, and construes the pleadings in the light most favorable to the non-moving party. *See, e.g., Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, the record for

review before the Court is generally limited to the complaint, some matters that are part of the public record, and any documents attached as exhibits that are necessarily embraced by the complaint. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

### B.  Unfair Competition

In its FAC, Cool-Pak asserts an unfair competition claim against Royal Interpack.[3] "Unfair competition is not a stand-alone tort with specific elements." *Cenveo Corp. v. S. Graphic Sys., Inc.*, 784 F. Supp. 2d 1130, 1142 (D. Minn. 2011). "[I]t describes a general category of torts which courts recognize for the protection of commercial interests." *Id.* (internal quotation marks omitted). In order to pursue a claim for unfair competition, a plaintiff must identify the underlying tort that is the basis for the claim. *Id.* Where a plaintiff bases its claim of unfair competition on the same underlying factual allegations as its other independent claims, the unfair competition claim is duplicative of the independent claims and must be dismissed. *Guy Carpenter & Co., Inc. v. John B. Collins & Assocs., Inc.,* No. 05–1623, 2006 WL 2502232, at *9 (D. Minn. Aug. 29, 2006). Because Cool-Pak bases its claim for unfair competition on the same factual allegations underlying its tortious interference claims, the Court will grant Royal Interpack's motion to dismiss the unfair competition claim.

---

[3] Cook-Pak pled no facts to specifically support this claim and did not oppose Royal Interpack's motion to dismiss this claim in its briefing.

### C.     Tortious Interference with Contracts Between Cool-Pak and Its Clients

In its FAC, Cool-Pak asserts that Royal Interpack tortiously interfered with Cool-Pak-customer contracts.  A cause of action for tortious interference with a contract requires five elements: (1) existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach; (4) defendant's actions were without justification; and (5) damages.  *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (internal citation omitted).

The Court finds that Cool-Pak has failed to adequately claim the existence of a contract between Cool-Pak and its customers.  Although Cool-Pak identified several of its customers in the FAC, it does not allege that it had a **contract** with those customers.  Its complaint**,** at best, alleges: "Royal Interpack NA had notice of Cool-Pak's contractual and/or business relations with Cool-Pak clients."  (FAC ¶ 64.)  Because Cool-Pak failed to assert the existence of a contract with its customers, it has failed to state a claim for tortious interference with its customer contracts.  Consequently, the Court will grant Royal Interpack's motion to dismiss this claim.

Although the Court would consider a motion to amend the complaint, Cool-Pak is reminded it must allege sufficient, well-pleaded facts to support its assertions of misconduct.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

### D. Tortious Interference with Business Relations Between Cool-Pak and Its Clients

Cool-Pak also asserts Royal Interpack tortiously interfered with Cool-Pak's business relations with its clients. A plaintiff must prove five elements to make a tortious interference with business expectancy claim:

> (1) the existence of a reasonable expectation of economic advantage or benefit belonging to Plaintiff; (2) that Defendants had knowledge of that expectation of economic advantage; (3) that Defendants wrongfully and without justification interfered with Plaintiff's reasonable expectation of economic advantage or benefit; (4) that in the absence of the wrongful act of Defendants, it is reasonably probable that Plaintiff would have realized his economic advantage or benefit; and (5) that Plaintiff sustained damages as a result of this activity.

*Lamminen v. City of Cloquet*, 987 F. Supp. 723, 731 (D. Minn. 1997) (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632-33 (Minn. 1982)). Royal Interpack asserts that this claim should fail because "Royal Interpack has acted accidentally, or negligently." (Def.'s Supp. Mem. at 6, Docket No. 23.)

Cool-Pak specifically alleges in its FAC that Royal Interpack "intentionally . . . procured the breach" of Cool-Pak's business relations. (FAC ¶ 66.) In addition, Cool-Pak alleges that Royal Interpack representatives met with Larsen and a Cool-Pak customer, with the knowledge that Larsen was still employed by Cool-Pak. (*See id.* ¶¶ 21-37.) Cool-Pak also pleads the expectation of economic advantage (*id.* ¶¶ 8-11), the loss of expected economic benefit (*id.* ¶¶ 43, 68, 75), and damages (*id.*). Taking all facts alleged in the FAC as true, the Court finds that Cool-Pak has asserted a claim for tortious interference with business relations, and Royal Interpack's motion to dismiss this claim will be denied.

### E.   Tortious Interference with Contract Between Cool-Pak and Larsen

Cool-Pak asserts Royal Interpack tortiously interfered with Cool-Pak's non-compete agreement with Larsen.  A cause of action for tortious interference with a contract requires five elements: (1) existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach; (4) defendant's actions were without justification; and (5) damages.  *Kallok*, 573 N.W.2d at 362.  The Court finds that Cool-Pak has failed to plead Royal Interpack's knowledge of the non-compete agreement or its intentional procurement of the contract's breach.

In its FAC, Cool-Pak does assert that at "all relevant times Royal Interpack NA was aware Larson was employed by Cool-Pak." (FAC ¶ 37.)  Cool-Pak also alleges that it "has a valid contractual and/or employment relationship with Larsen" and "Royal Interpack NA knew or should have known of the contractual and/or employment relationship." (*Id.* ¶¶ 78-79.)  However, nowhere in the FAC does Cool-Pak assert that Royal Interpack knew Larsen and Cool-Pak had a non-compete agreement or knew that Larsen's work for Royal Interpack violated the terms of this non-compete agreement.[4]

Because Cool-Pak failed to plead that Royal Interpack had knowledge of the non-compete agreement between Cool-Pak and Larsen, the Court finds that Cool-Pak has failed to adequately allege a claim for tortious interference with a contract between Cool-

---

[4] In its briefing, Cool-Pak argues that because Royal Interpack knew Larsen was employed by Cool-Pak, it knew Larsen had a fiduciary duty of loyalty to Cool-Pak. (*See* Pl.'s Opp. Mem. at 14.)  However, a duty of loyalty is not a contract, and these allegations are not sufficient to allege that Royal Interpack knew of a **contract** between Cool-Pak and Larsen.

Pak and Larsen. Royal Interpack's motion to dismiss this claim, without prejudice, will be granted.[5]

### F. Tortious Interference with Business Relations Between Cool-Pak and Larsen

Cool-Pak further alleges that Royal Interpack tortiously interfered with its business relations with Larsen. There are five elements of a tortious interference with business expectancy claim:

> (1) the existence of a reasonable expectation of economic advantage or benefit belonging to Plaintiff; (2) that Defendants had knowledge of that expectation of economic advantage; (3) that Defendants wrongfully and without justification interfered with Plaintiff's reasonable expectation of economic advantage or benefit; (4) that in the absence of the wrongful act of Defendants, it is reasonably probable that Plaintiff would have realized his economic advantage or benefit; and (5) that Plaintiff sustained damages as a result of this activity.

*Lamminen* 987 F. Supp. at 731 (D. Minn. 1997).

Royal Interpack asserts that this claim should fail because "Royal Interpack has acted accidentally, or negligently." (Def.'s Supp. Mem. at 6, Docket No. 23.) Yet, Cool-Pak alleges that Royal Interpack knew of Larsen's employment with Cool-Pak (*see FAC* ¶¶ 37, 44, 80) and intentionally interfered with Cool-Pak's employment relationship with Larsen (*id.* ¶ 81). The Court find that Cool-Pak has pled a claim of intentional conduct "that is plausible on its face." *Iqbal,* 129 S. Ct. at 1949.

---

[5] The Court notes that it would consider a motion to amend the complaint if Cool-Pak alleges sufficient, well-pleaded facts to support its assertions of misconduct. *See Iqbal,* 129 S. Ct. at 1949-51.

Royal Interpack also argues that this claim should fail because Cool-Pak only alleged acts and omission by Larsen − not Royal Interpack. In its FAC, Cool-Pak alleged that Royal Interpack knew Larsen was employed by Cool-Pak (FAC ¶ 37) and that Royal Interpack is a **direct competitor** of Cool-Pak (*id.* ¶ 27). Cool-Pak further alleged that Royal Interpack employed Larsen to sell products that competed with Cool-Pak's (*see id.* ¶¶ 28, 35) to customers that had previously purchased products − through Larsen − from Cool-Pak (*id.* ¶ 45).[6] The Court finds that Cool-Pak has adequately pled intentional conduct by Royal Interpack in light of Royal Interpack's knowing employment of Larsen while he was employed by a direct competitor.[7] The Court also finds that Cool-Pak has adequately pled the other elements of tortious interference with business relations, and it will deny Royal-Interpack's motion to dismiss this claim.

### G. Consideration for the Employment Agreement

In the alternative, Royal Interpack asserts that **all** the tortious interference with contract claims should be dismissed because the non-compete agreement between Cool-Pak and Larsen fails for inadequate consideration or invalidity. The Court notes that only Cool-Pak's claim for tortious interference with Larsen's non-compete agreement relies on the validity of the non-compete agreement. Because the Court will dismisses the tortious

---

[6] In contrast to the facts in the cases it cites where no interference with an employment contract was found, *see, e.g. Cenveo,* 784 F. Supp. 2d at 1140, Royal Interpack employed Larsen **while** he was still employed by a direct competitor.

[7] Royal Interpack also asserts that actions by Larsen do not constitute conduct by Royal Interpack. Because the Court finds that Cool-Pak has adequately pled conduct by Royal Interpack (without considering Larsen's conduct), Royal Interpack's arguments regarding Larsen's conduct are not considered.

interference with Larsen's contract claim on other grounds (*see* Part II. E, *supra*), Royal Interpack's arguments regarding non-compete agreements are moot.

### H. Conspiracy Claim

In its FAC, Cool-Pak asserts an unfair competition claim against Royal Interpack, alleging that Larsen and Royal Interpack conspired to commit tortious interference. "Accurately speaking, there is no such thing as a civil action for conspiracy" under Minnesota law. *GSS Holdings, Inc. v. Greenstein,* No. A07-1573, 2008 WL 4133384, at *2 (Minn. Ct. App. Sept. 9, 2008) (internal quotation marks omitted). Rather, "a civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability, and hence such a 'claim' is dependent upon a valid underlying tort claim." *Carlson v. A.L.S. Enters., Inc.,* No. 07-3970, 2008 WL 185710, at *5 (D. Minn. Jan. 18, 2008). Because the Court will deny dismissal of Cool-Pak's tortious interference with business relations claims, there is a valid underlying tort claim. The court will deny Royal Interpack's motion to dismiss the conspiracy claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Royal Interpack's Motion for Summary Judgment [Docket No. 21] is **DENIED**.

2. Royal Interpack's Motion to Dismiss [Docket No. 21] is **GRANTED in part** and **DENIED in part**, as follows:

      a.    The motion is **GRANTED** as to Cool-Pak's claim for unfair competition (Count II).  Count II is **DISMISSED with prejudice**.

      b.    The motion is **GRANTED** as to Cool-Pak's claims for tortious interference with contract (Counts III and V).  Counts III and V are **DISMISSED without prejudice**.

      c.    The motion is **DENIED** as to Cool-Pak's claims for tortious interference with business relations (Counts IV and VI).

      d.    The motion is **DENIED** as to Cool-Pak's claim for conspiracy (Count VII).

DATED: May 29, 2012  
at Minneapolis, Minnesota.

                                                      ____s/ John R. Tunheim____  
                                                          JOHN R. TUNHEIM  
                                                     United States District Judge